120 B.R. 855 (1990)
In re Mohammad NASR, Debtor.
TEXAS TRUST SAVINGS BANK, Plaintiff,
v.
Mohammad NASR, Defendant.
Bankruptcy No. 88-08063-H3-11, Adv. No. 89-0030-H3.
United States Bankruptcy Court, S.D. Texas, Houston Division.
July 3, 1990.
*856 Evelyn N. Howard-Hand, Kammerman & Overstreet, P.C., Austin, Tex., for plaintiff.
Jeff Horowitz, Crain, Caton & James, Houston, Tex., for defendant.

MEMORANDUM OPINION
LETITIA Z. CLARK, Bankruptcy Judge.
Came on for hearing the Motion for Partial Summary Judgment filed by Texas Trust Savings Bank, a successor in interest to Peoples Savings and Loan Association, and after considering the evidence, pleadings, memoranda and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith denying the Motion for Partial Summary Judgment. To the extent any findings of fact are herein construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law are construed to be findings of fact they are hereby adopted as such.

Findings of Fact
This adversary was filed by plaintiff, Texas Trust Savings Bank, as a complaint to determine the dischargeability of the debt due to plaintiff on a construction loan. Defendant, Mohammad Nasr, has set forth the affirmative defenses of setoff and recoupment to the complaint. The affirmative defenses of defendant are based on allegations of breach of contract, breach of warranty, and fraud.
On or about June 6, 1986, Mohammad Nasr, Debtor, duly executed and delivered to Peoples Savings and Loan Association ("Peoples"), a Promissory Note in the original principal sum of $2,526,000.00. The loan was for the acquisition and development of real property located in Travis County, Texas (more fully described in plaintiff's amended complaint  Docket No. 46). The construction note was secured by the property. Nasr and Peoples also entered into a Loan Agreement which set forth the terms and conditions under which Peoples would advance funds under the note. Under the terms of the note and agreement, the parties agreed the proceeds from the note would be drawn as necessary to pay expenses incurred under specific budget categories.
Nasr alleges that in order to obtain the construction loan, he was required by Peoples to purchase a marine complex in Corpus Christi, Texas. He asserts the documents for the construction loan and the documents for the purchase of the marina were prepared, negotiated, and closed at the same time, by and between the same parties. Nasr claims the entire transaction was treated as one: had there been no closing of the purchase of the marina, Nasr would have been denied the necessary construction funding for the Austin shopping center. Nasr argues he was fraudulently induced to purchase the marina.
Defendant Nasr applied to Peoples for the first draw on the construction note. Plaintiff Texas Trust alleges Nasr made fraudulent representations to Peoples as to how the funds drawn would be used. Texas Trust also asserts that Peoples relied on these representations in approving subsequent advances.
Nasr claims Peoples subsequently contacted him in November, 1986, and requested he delay construction since Peoples' financial condition did not permit funding at that time. Several months later, Peoples refused a draw request by Nasr and suspended funding under the loan contract. Nasr alleges Peoples funded less than half of the original amount.
*857 On December 29, 1989, the Federal Home Loan Bank Board passed a resolution placing Peoples Savings and Loan Association into receivership. The Federal Savings and Loan Insurance Corporation was appointed as receiver for Peoples Savings and Loan Association. Following the appointment of the FSLIC as receiver, Texas Trust Savings Bank entered into an Acquisition Agreement with the FSLIC. Texas Trust Savings Bank acquired some of the assets of Peoples Savings & Loan Association from the FSLIC. This included the note executed by M. Nasr and payable to Peoples Savings and Loan Association (Amended Affidavit of Terry Whitman  Docket No. 47).

Conclusions of Law

ISSUE 1  Setoff as Claim or Defense
Plaintiff Texas Trust argues Nasr's affirmative defenses of setoff and recoupment may only be pled as counterclaims. Texas Trust asserts the complaint for setoff is an independent claim against Texas Trust for affirmative relief: i.e. judgment for damages incurred by Nasr as a result of alleged fraud of Peoples Savings and Loan Association. Texas Trust argues that a claim for setoff is not an affirmative defense. It further alleges the right to setoff one debt against the other does not constitute a defense but merely entitles defendant to a reduction of the judgment allowed. "A setoff is a counter demand which the defendant holds against the plaintiff arising out of a transaction extrinsic of plaintiff's cause of action." Montgomery Ward & Company v. Robert Cagle Building Company, 265 F.Supp. 469 (S.D.Tex.  Houston, 1967); Hunt v. Bankers Trust Company, 689 F.Supp. 666 (N.D. Tex.  Dallas, 1987). Plaintiffs allege the claim for setoff is a counterclaim rather than an affirmative defense. These cases do not directly address the issue of whether a claim for setoff may be used as a defense.
Defendant Nasr does not raise the defenses of setoff and recoupment based on fraud, breach of warranty, and breach of contract to seek an affirmative relief, but only to defeat Texas Trust's allegation of fraud under § 523(a)(2)(A). Nasr asserts he may elect to plead a claim as a defense. Numerous courts have treated the claim of setoff and recoupment as a defense which, while not in the nature of an affirmative claim for judgment, may be interposed in diminution of a plaintiff's claim. Desjardins v. Desjardins, 193 F.Supp. 210, 215 (E.D.Ky.1961) and cases cited therein.
According to 2A Moores Federal Practice, § 8.27(3), setoff and recoupment may be pled as either a counterclaim or an affirmative defense; a defendant is not compelled to use setoff as a defense and does not waive his right to setoff by declining to use it defensively. Claims of a debtor against a creditor for setoff may be asserted as a defense to the creditor's claim. 1A Bankruptcy Service Lawyers' Edition, § 4:42. A trustee's right to offset debtor's security deposit against unpaid rent was a defense the trustee could assert. In re Standard Furniture Co., 3 B.R. 527 (Bankr.S.D.Cal.1980).
There are few cases which address the issue of whether a claim for setoff may be asserted as a defense. In determining which should be controlling the following should be considered: exceptions to discharge under § 523 are construed narrowly, In re Belfry, 862 F.2d 661 (8th Cir. 1988); the Bankruptcy Court must narrowly construe exceptions to discharge against the creditor and in favor of the debtor, In re Kudla, 105 B.R. 985 (Bankr.Colo.1989); exceptions to dischargeability of debts under § 523(a) are construed narrowly in favor of the debtor, In re Richey, 103 B.R. 25 (Bankr.Conn.1989). The case law is well settled on this policy of favoring the debtor in actions to determine dischargeability.

ISSUE 2May Debtor Assert Defenses
Plaintiff Texas Trust asserts the claim of setoff or recoupment cannot be asserted by the bankrupt individual since these claims are property of the estate. Plaintiff Texas Trust argues that 11 U.S.C. § 541 bars the individual from bringing these defenses. Section 541 addresses *858 claims which are property of the estate but does not address affirmative defenses.
11 U.S.C. § 558 allows the bankruptcy estate the benefit of any defense available to the debtor as against any entity other than the estate. The trustee is entitled to use the defense to its fullest extent without preventing the debtor from raising the same. Collier on Bankruptcy § 558.01 (pg 558-4) 15th Edition. The trustee's right under § 558 to assert debtor's defenses differs from the exclusive right to assert debtor's causes of action. Id.
Debtor is asserting the actions of setoff and recoupment as affirmative defenses to the claim of fraud under § 523(a)(2)(A). As defenses, these actions are not exclusive to the trustee and may be asserted by the debtor. A trustee has no incentive to raise defenses in a complaint to determine dischargeability since this would provide little or no benefit to the estate, but no reason has been shown to bar debtor from raising these defenses. Furthermore, allowing debtor to raise these defenses is consistent with the policy of favoring debtor in a complaint to determine dischargeability.

ISSUE 3  Applicability of the D'OENCH DUHME DOCTRINE
Plaintiff Texas Trust argues that Nasr's defenses are barred by the D'Oench Duhme doctrine and the federal holder in due course doctrine.
Extending the status of a holder in due course to a federal institution as a matter of federal common law was derived from the D'Oench Duhme doctrine. FSLIC v. Murray, 853 F.2d 1251 (5th Cir.1988). Essentially, the Fifth Circuit in the Murray case held that FSLIC should enjoy at least holder in due course status as a matter of federal common law. Since the federal holder in due course doctrine encompasses basically the same issues and principles covered by the D'Oench Duhme doctrine, the following discussion relating to the D'Oench, Duhme doctrine is equally applicable to the federal holder in due course doctrine.
In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the FDIC acquired a note from a failed bank and sued D'Oench, Duhme & Co. for payment. The maker, D'Oench, asserted the defense of failure of consideration based on a secret collateral agreement with the bank that the note would not be enforced. The Supreme Court held that "an accommodation maker is not allowed the defense of no consideration as against the receiver of the bank or its creditors where his act contravenes the general policy to protect the institution of banking from such secret agreements." D'Oench, Duhme & Co., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). D'Oench also asserted the FDIC was not a holder in due course.
The doctrine set forth in D'Oench Duhme has been expanded to bar most personal defenses raised by the maker to avoid payment of a note which was payable to a failed financial institution. FSLIC v. McLean, No. CA3-87-3005-D, slip op. at 10 (N.D.Tx. Nov. 14, 1988). The court in McLean cites numerous cases in which the D'Oench Duhme doctrine barred a defense. The D'Oench Duhme doctrine has been used to prohibit the assertion of defenses based on separate secret agreements "when the FDIC seeks to enforce unconditional notes and guarantees." In re Pernie Bailey Drilling Co., 111 B.R. 565 (Bankr.W.D.La.1990); In re Perri Kanterman, 108 B.R. 432 (S.D.N.Y.1989), (emphasis added).
All of the cases cited by the court in McLean and in Texas Trust's briefs on D'Oench Duhme are suits to enforce a note in which the court prohibited defenses based on a secret collateral agreement with the failed bank. Texas Trust argues that whether the claim for setoff or recoupment is raised in a proceeding on a complaint to determine dischargeability or in a lawsuit for collection of the note, the effect is the same, recovery by the new bank is reduced. Texas Trust alleges that therefore the D'Oench Duhme doctrine should apply and defendants should be barred from raising the defenses. Defendants contend D'Oench Duhme and its progeny do not *859 apply to cases contesting dischargeability in a bankruptcy proceeding.
A suit to collect on the note is a suit on a negotiable instrument which clearly defines the obligation of the borrower. A suit to render an obligation evidenced by the note nondischargeable is not based on the instrument but on a myriad of elements necessary to prove actual fraud. Plaintiff's claim is not a suit on the note, but a suit on facts surrounding the loan transaction. The basis of plaintiff's claim is not the direct collection of the note but allegations of fraud under 11 U.S.C. § 523(a)(2)(A).
Bankruptcy Courts have limited the applicability of D'Oench Duhme in bankruptcy proceedings. The D'Oench Duhme doctrine and its progeny will not defeat a trustee's claims for fraudulent transfers and preferences under the Bankruptcy Code. In re Pernie Bailey Drilling Co., 111 B.R. 565 (Bankr.W.D.La.1990); In re Perri Kanterman, 108 B.R. 432 (S.D.N.Y. 1989). The courts have granted the trustee affirmative judgments despite the D'Oench Duhme doctrine. Defendant Nasr is not seeking an affirmative judgment against Texas Trust. Nasr is merely seeking to assert his defenses to their allegations of fraud in the complaint to determine dischargeability.
Exceptions to discharge are construed narrowly in light of the overriding purpose of the bankruptcy laws, which is comprehensive relief from virtually all indebtedness. In re Spilotros, 105 B.R. 708 (Bankr.M.D.Fla.1989); In re Coffee, 103 B.R. 825 (Bankr.S.D.Tex.1987); In re Harrell, 94 B.R. 86 (Bankr.W.D.Tx.1988). Applying the D'Oench Duhme doctrine to bar the debtor's defenses in a suit to determine dischargeability is inconsistent with the policies of providing debtor with relief from indebtedness, and of favoring debtor in a dischargeability action.
If the debt is found nondischargeable, then Texas Trust may pursue an action to collect on the note. In addition, the FDIC or its assignees may pursue collection of the note against a bankrupt obligor through the claims process as a creditor. It may be that D'Oench Duhme could properly be raised by Texas Trust at those points.
Based on the foregoing, Texas Trust's Motion for Partial Summary Judgment is denied. A separate Judgment will be entered by the court pursuant to the court's Findings of Fact and Conclusions of Law.